1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALASKA AIRLINES,

            Plaintiff,

        v.

INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE
WORKERS, *et al.*,

            Defendants.

CASE NO.  C05-0486RSM

MEMORANDUM ORDER
DENYING DEFENDANTS'
MOTION FOR PRELIMINARY
INJUNCTION

## I.  INTRODUCTION

This matter comes before the Court on defendants' Emergency Motion for Preliminary Injunction.  (Dkt. #10).  Defendants argue that plaintiff violated Section 6 and Section 2, Seventh, of the Railroad Labor Act ("RLA").  Specifically, defendants argue that plaintiff violated the RLA by changing the status quo before release from mediation.  Defendants further argue that plaintiff violated the RLA by failing to bargain in good faith, as required by Section 2, First, of the RLA.

Plaintiff argues that it has not violated the RLA, and in particular, the requirement to maintain the status quo, because the status quo requirement includes the exercise of the company's express right to subcontract under the pre-existing labor agreement.  Plaintiff further

ORDER DENYING PRELIMINARY INJUNCTION
PAGE - 1

argues that this Court lacks subject matter jurisdiction over this dispute because it is a "minor dispute," subject to the mandatory and exclusive arbitration jurisdiction under the RSSA agreement.  Plaintiff also argues that defendant's claim under Section 2, First, of the RLA is completely without merit, and cannot serve as a basis for a preliminary injunction, because plaintiff already had the right to engage in the subcontracting at issue.  Finally, plaintiff argues that the IAM and Seattle ramp workers will not suffer irreparable injury if a preliminary injunction is denied, and any harm that would occur is outweighed by the harm to plaintiff, the traveling public and other third parties.

For the reasons set forth below, the Court agrees with plaintiff and DENIES defendants' motion for preliminary injunction.

## II.  DISCUSSION.

### A.  Background

This matter arises from stalled negotiations between plaintiff and defendant, International Association of Machinists and Aerospace Workers ("IAM"), pertaining to a collective bargaining agreement for plaintiff's ramp and stores employees, known as the "RSSA" agreement.  The agreement is subject to the Railway Labor Act ("RLA").  It became effective on January 10, 2000, and "amendable," as plaintiff asserts, or "expired," as defendants assert, on January 10, 2004.

In 2003, plaintiff had embarked on a large-scale cost-cutting campaign due to the state of economic distress suffered by the airline industry.  The airline calculated that it would need to cut costs by $307 million in order to return to profitability and growth.  Accordingly, as part of this cost-cutting effort, plaintiff turned toward the work performed by ramp and stores employees.

In the summer of 2003, the parties began negotiations for changes to the RSSA agreement.  Defendants assert that, prior to the expiration of the contract, they served plaintiff

ORDER DENYING PRELIMINARY INJUNCTION
PAGE - 2

with a notice of intent to reopen the agreement, and informed plaintiff that proposed modifications and amendments would be submitted.  Defendants also asked for a conference pursuant to the RLA and the agreement.

On August 17, 2003, defendants sent the proposed modifications to plaintiff. Defendants sought to remove Article 2, Paragraph B, which pertained to the subcontracting provisions of the agreement.  In relevant part, Article 2.B.5. states that "the company may . . . (5) contract out any work for which the company's cost exceeds the vendors charges, less material[.]"  Defendants proposed new language, eliminating the existing paragraph, and replacing it with: "The Company reserves the right to contract out other work with the approval of the Union."

The parties began direct negotiations on September 11, 2003.  Plaintiff asked for changes to the agreement that they valued at approximately two million dollars.  Plaintiff notes that, at that point, the agreement had not yet become amendable, so it was essentially seeking voluntary concessions.  However, the parties could not agree, and, on January 9, 2004, jointly filed a request for mediation of their dispute by the National Mediation Board ("NMB").

In November of 2004, before the NMB released the parties from mediation, plaintiff announced that it was soliciting bids from outside contractors to perform ramp work.  Plaintiff estimated that, based on proposals received from vendors, subcontracting the ramp work would save more than $13 million per year.  Plaintiff relied on Article 2.B.5., *supra*, in support of its move to subcontract the work.

In January of 2005, the IAM sent a letter to plaintiff taking the position that the RSSA agreement did not support such wholesale subcontracting of Seattle's ramp operations.  Plaintiff responded that it disagreed, and apparently suggested that the parties proceed with expedited arbitration under the labor agreement.  Plaintiff then served its Notice of Submission of Dispute.

On February 24, 2005, plaintiff informed defendants that it had reached a formal

ORDER DENYING PRELIMINARY INJUNCTION
PAGE - 3

1  agreement with Menzies Aviation Group, Inc. to provide Seattle ramp service.

2        Both parties assert that the other refused to participate in direct bargaining sessions

3  throughout March of 2005.  However, at some point after the parties failed to come to any

4  agreement, the NMB reassumed active jurisdiction, and assigned a mediator who started

5  conducting mediation sessions on April 12, 2005.

6        During negotiations on April 14 and 15, 2005, the parties could not come to an

7  agreement regarding the decision to subcontract the Seattle ramp work.  Eventually, defendants

8  proposed a vote on the agreement, which was subsequently struck down by IAM members after

9  the IAM recommended a "no" vote.  Defendants assert that they requested that the NMB

10  continue to conduct mediation sessions, but plaintiff apparently refused to attend.

11        Plaintiff asserts that on the afternoon and evening of May 12, 2005, IAM 143 President,

12  Robert De Pace, spoke with plaintiff's vice president of employee services and its CEO, asking if

13  Alaska Airlines intended to subcontract the ramp work starting on May 15, 2005.  Plaintiff

14  apparently responded that a decision had not yet been made, and that a decision would be made

15  by the end of May.  However, at 2:30 a.m. on May 13, 2005, IAM-employees working the

16  midnight shift at SeaTac airport were escorted off the premises.  Plaintiff then called the

17  remaining IAM employees and told them not to report for work.  Menzies employees began

18  performing the ramp work that day.  Plaintiff states that the May 13 date was necessary because

19  of possible disruptions at SeaTac airport by employees of other airlines, such as United, who had

20  just been allowed to terminate its pension plans.

21        Defendants then filed the immediate emergency motion for preliminary injunction.

22  Defendants argue that subcontracting the ramp work has a devastating and immediate effect on

23  the bargaining process mandated by the RLA.  Defendants assert that eliminating a majority of

24  the bargaining unit in the middle of negotiations will chill union activity, undercut support for

25  the union and intimidate employees in the exercise of their rights guaranteed by the RLA.

26

ORDER DENYING PRELIMINARY INJUNCTION
PAGE - 4

Defendants also assert that injunctive relief is necessary because it will be nearly impossible to construct a remedy after the fact that would return the ramp workers to the status quo. Finally, defendants note that the statutorily-mandated mediation under the jurisdiction of the NMB is ongoing, and the parties have not yet been released.

Plaintiff notes that all affected Alaska employees are receiving full pay and benefits, without condition, until July 15, 2005. In addition, all affected employees will have the opportunity to exercise their "bumping rights," or to accept furlough and remain eligible for recall, or, with the IAM's consent, to accept a voluntary severance package. Plaintiff asserts that any harm to the employees after July 15, 2005, can be fully remedied by an order of back pay.

**B. Standard of Review for Preliminary Injunctions**

To obtain a preliminary injunction, defendants must demonstrate either: (1) probable success on the merits and the possibility of irreparable harm; or (2) that serious questions have been raised and the balance of hardships tips in their favor. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). The Ninth Circuit Court of Appeals has explained that each of these two prongs "requires an examination of both the potential merits of the asserted claims and the harm or hardships faced by the parties. We have held that 'these two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.' Additionally, 'in cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff.'" *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 965 (9th Cir. 2002) (citations omitted). Accordingly, the Court will discuss each of these elements, in turn, below.

*1. Likelihood of Success on the Merits*

a. Railway Labor Act – Major/Minor Disputes

ORDER DENYING PRELIMINARY INJUNCTION
PAGE - 5

1       Congress passed the RLA with the intent to avoid interruptions to commerce that had

2 historically plagued the transportation industry.  *Detroit and Toledo Shore Line v. United*

3 *Transportation Union*, 396 U.S. 142, 148 (1969); *International Ass'n of Machinists &*

4 *Aerospace Workers v. NMB*, 425 F.2d 527, 533 (D.C. Cir. 1970).  A major principle set forth in

5 the Act is maintaining the status quo.  As explained in *Detroit and Toledo Shore Line*, *supra*, the

6 immediate effect of the status quo requirement is to prevent the union from striking and the

7 management from doing anything that would justify a strike.  *Detroit and Toledo Shore Line*,

8 396 U.S. at 150.

9       Reopening a bargaining agreement under the RLA is a very formal process.  To begin,

10 the parties exchange Section 6 notices proposing changes in rates of pay, rules and working

11 conditions.  45 U.S.C. § 156.  The notices trigger the parties' obligations to negotiate.  *Id.*  The

12 parties then begin direct negotiations.  If those negotiations are unsuccessful, one or both parties

13 may request mediation by the NMB.  45 U.S.C. § 155.  If the NMB determines that additional,

14 direct negotiations would be unsuccessful, then it will offer voluntary, binding arbitration to the

15 parties.  45 U.S.C. § 155.  Both parties must then agree to submit the dispute to arbitration.  45

16 U.S.C. § 157.  If the parties do not agree, there are no further mediation or arbitration

17 requirements under the RLA.  In addition, whether the parties agree or disagree to submit a

18 dispute, the parties must wait 30 days from their release from mediation by the NMB before

19 engaging in self-help.  Once a Section 6 Notice has been served, the status quo requirement also

20 begins.  45 U.S.C. § 156.  *See also* 45 U.S.C. § 152, Seventh.  The parties agree that plaintiff

21 has an interest in maintaining the status quo in the instant case.

22      All disputes that arise between parties of a collective bargaining agreement are either

23 major or minor.  *Elgin, Joliet and Eastern Ry. Co. v. Burley*, 325 U.S. 711, 722-24 (1945).

24 Major disputes are those related to the formation and modification of collective bargaining

25 agreements.  *Id.* at 723.  Minor disputes relate to interpretation of existing bargaining disputes.

26

ORDER DENYING PRELIMINARY INJUNCTION
PAGE - 6

Federal courts are empowered "to issue an injunction maintaining the status quo with respect to the major dispute." *O'Donnell v. Wien Air Alaska, Inc.*, 551 F.2d 1141, 1147 (9th Cir. 1977). In a minor dispute, the carrier is free to act on the basis of its interpretation of its contractual rights subject to later review by an arbitrator. *See, e.g., Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 204 (1989).

In the instant case, the parties differ on whether this dispute is major or minor. This issue controls the jurisdiction of this Court to issue a preliminary injunction. Defendants argue that because Section 6 Notice has been given, and the contract expired by its own terms, any dispute about changes to the status quo is major. In support of their position, defendants rely on the Ninth Circuit Court of Appeals' decision in *International Ass'n Machinists & Aerospace Workers v. Aloha Airlines, Inc.*, 776 F.2d 812, 815-16 (9th Cir. 1985), which held that the dispute in question was "major" because the bargaining agreement had expired, and there "was simply no existing collective bargaining agreement to interpret." *Aloha Airlines*, 776 F.2d at 816. Plaintiff answers that the United States Supreme Court has since clarified the definition of a major or minor dispute, and *Aloha Airlines* is no longer controlling law. The Court agrees with plaintiff.

In *Consolidated Rail Corp.*, *supra*, the Supreme Court explained that "[w]here an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective bargaining agreement." *Consolidate Rail Corp.*, 491 U.S. at 307. Based on this decision, many circuit courts have since refused to follow the Ninth Circuit Court of Appeals' reasoning in *Aloha Airlines. See, e.g., Airline Professionals Association v. ABX Air, Inc.*, 400 F.3d 411, 415 (6th Cir. 2005); *Miklavic v. US Air, Inc.*, 21 F.3d 551, 554 (3rd Cir. 1994) (explaining that "[t]o follow *Aloha* would mean that every dispute, no matter how firmly based in the existing but expired contract and no matter how insignificant, would become a major dispute subject to federal court jurisdiction.

ORDER DENYING PRELIMINARY INJUNCTION
PAGE - 7

The *Aloha* rule upsets settled law governing post-expiration disputes that the mere filing of a section 6 notice does not turn a minor dispute into a major one.").

In the instant case, plaintiff relies on Article 2.B.5. of the existing, but since expired, bargaining agreement to support its decision to subcontract ramp operations. Because plaintiff's subcontracting of the Seattle ramp operations under that Article is arguably justified, the Court agrees with plaintiff that IAM's status quo claim constitutes a minor dispute, within the sole jurisdiction of the System Board of Adjustment. Accordingly, this Court lacks jurisdiction to issue a preliminary injunction in this case.

Likewise, the Court is not persuaded by defendants' brief argument that the Court should enter a preliminary injunction even if their claim constitutes a minor dispute. Defendants argue that injunctive relief is appropriate in a minor dispute to prevent an injury so irreparable that an ultimate decision in favor of the IAM "would be but an empty victory." *Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R.R.*, 363 U.S. 528, 534 (1960). As discussed in further detail below, defendants have not demonstrated such irreparable harm at this time.

However, even if the Court did have jurisdiction over this dispute, it is unlikely that defendants would succeed on the merits of their claim. The U.S. Supreme Court has recognized that a carrier may take actions that are expressly authorized by the pre-existing collective bargaining agreement even though a union has served a Section 6 notice seeking to bargain about that conduct. *See Pittsburgh & Lake Erie R.R. v. Railway Labor Executives' Ass'n*, 491 U.S. 490 (1989). In *Pittsburgh & Lake Erie R.R.*, the unions argued that, based on the service of their Section 6 notices and the Supreme Court's decision in *Detroit & Toledo Shore Line R.R.*, *supra*, the working conditions of the railroad could not be changed until exhaustion of the bargaining procedures. This is the same argument presented by defendants in the instant case. The Supreme Court rejected that argument, holding that the status quo requirement did not prevent the railroad from taking action, and explaining:

ORDER DENYING PRELIMINARY INJUNCTION
PAGE - 8

> Absent statutory direction to the contrary, the decision of a railroad employer to go out of business and consequently to reduce to zero the number of available jobs is not a change in the conditions of employment forbidden by the status quo provision of § 156. In these cases, P&LE concluded that it must sell its assets, and its agreement to sell to Railco, if implemented, would have removed it from the railroad business; no longer would it be a railroad employer. No longer would it need the services of members of the rail unions. The RLEA concedes that had the collective-bargaining agreements expressly waived bargaining concerning sale of P&LE's assets, the unions' § 156 notices to change the agreements could not trump the terms of the agreements and could not delay the sale.

*Pittsburgh & L. E. R. Co.*, 491 U.S. at 509.

Neither of the cases that defendants rely on, *Detroit & Toledo Shore Line* and *Aloha Airlines*, *supra*, contradict that decision.  In *Detroit & Toledo Shore Line*, the Supreme Court was asked to examine a subject on which the collective bargaining agreement was silent. Because neither the collective bargaining agreement nor the parties' past practice supported the challenged conduct, the Court found that the railroad had violated the status quo.  Similarly, in *Aloha Airlines*, the Ninth Circuit Court of Appeals explained that district courts must review the terms of the "expired" bargaining agreement, and the intent of the parties when they agreed to those terms, in order to determine what constitutes the statutory status quo.  Indeed, even the IAM's own website acknowledges that "[u]nder the Railway Labor Act, contracts never expire. They continue as the 'status quo' until amended."  Accordingly, the Court agrees with plaintiff that defendants have not demonstrated a likelihood of success on the merits of their status quo claim.

### b.  Railroad Labor Act – Good Faith Bargaining

Similarly, the Court agrees with plaintiff that defendants have not demonstrated a likelihood of success on the merits of their good faith bargaining claim.  RLA Section 2, First, requires the parties to "exert every effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreement or otherwise. . . ".  45 U.S.C. § 152, First.  Defendants argue that

ORDER DENYING PRELIMINARY INJUNCTION
PAGE - 9

1    plaintiff's unilateral alteration of the status quo justifies a violation of that statute.

2          As discussed above, it appears to this Court that plaintiff had the right to engage in the

3    subcontracting at issue under the provisions of the bargaining agreement.  Thus, plaintiff was not

4    required to bargain before doing so.  Moreover, it appears from the record that both parties have

5    bargained regressively, and both parties appear to have refused mediation sessions at various

6    points during bargaining negotiations.  Thus, the Court finds that defendants have not shown

7    that they are likely to succeed on the merits of this claim.

8          *2. Irreparable Harm and the Public Interest*

9          As for the issue of irreparable harm, the Court agrees with plaintiff that, should the

10   Court decline to grant the preliminary injunction, there will be no immediate, nor irreparable,

11   harm to defendants.  The Seattle ramp employees who were laid off on May 13, 2005, are still

12   employees of plaintiff, and will remain so, receiving full pay and benefits, until July 15, 2005.  In

13   addition, although the current deadline for employees to exercise their "bumping" rights is

14   currently set for June 7, 2005, plaintiff has offered to extend that deadline until July 15, as part

15   of an offer to submit this dispute to expedited arbitration so that a decision can also be issued by

16   that date.

17         While defendants argue that irreparable harm will occur because the IAM will lose its

18   status as bargaining representative, the Court is not persuaded.  Many courts have declined to

19   impose preliminary injunctions pending arbitration over the permissibility of the employer's

20   conduct, and where members can be remedied through traditional back pay awards, such as in

21   the instant case.  *See, e.g., Detroit Newspaper Publishers Ass'n v. Detroit Typographical*

22   *Union*, 471 F.2d 872, 877 (6th Cir. 1972) (rejecting the union's argument that irreparable injury

23   would result from "the appearance to its members that the Union is helpless to discharge its

24   obligations, which is its essential function); *Local Union No. 733 v. Ingalls Shipbuilding Div.*,

25   906 F.2d 149 (5th Cir. 1990) (finding that a unilateral change in a drug and alcohol policy did

26

ORDER DENYING PRELIMINARY INJUNCTION
PAGE - 10

not cause irreparable harm).

Finally, plaintiff argues that if an injunction were issued, irreparable harm is likely to occur to the traveling public and to the contracted Menzies employees.  In particular, plaintiff argues that returning Alaska ramp employees are likely to be poorly motivated, and may engage in misconduct in the handling of passenger baggage.  Additionally, plaintiff argues that the Menzies employees would be immediately discharged without severance pay or other compensation.  The Court finds these arguments highly speculative and without factual basis. However, the Court agrees that defendants have failed to demonstrate irreparable harm in any event.

Accordingly, the Court finds that defendants have failed to satisfy the irreparable harm prong, and no preliminary injunction should issue.

## III. CONCLUSION

Having reviewed defendants' motion for preliminary injunction (Dkt. #10), plaintiff's opposition (Dkt. #23), defendants' reply (Dkt. #24), the declarations in support of those briefs, and the remainder of the record, along with the oral arguments presented to the Court on June 2, 2005, the Court hereby ORDERS:

The Court DECLINES to impose a preliminary injunction due to lack of subject matter jurisdiction in this Court over a "minor" dispute.  In the alternative, the Court DECLINES to impose a preliminary injunction based on defendants' failure to demonstrate a likelihood of success on the merits, and failure to show irreparable harm.

The Clerk shall forward a copy of this Memorandum Order to all counsel of record.

DATED this  2nd  day of June, 2005.

ORDER DENYING PRELIMINARY INJUNCTION
PAGE - 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

/s/ Ricardo S. Martinez
RICARDO S. MARTINEZ
United States District Judge

ORDER DENYING PRELIMINARY INJUNCTION
PAGE - 12